# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Kenneth Joseph Woodard, | ) | Case No. 08-81442-TLS |
| | ) | |
| Debtor | ) | Adv. Pro. No. 21-08023-TLS |
| | ) | |

| | | |
|---|---|---|
| Kenneth Joseph Woodard, on behalf of | ) | |
| himself and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Navient Solutions, LLC and Navient Credit | ) | **CIRCUITWIDE CLASS ACTION** |
| Finance Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF KENNETH JOSEPH WOODARD'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   This Court has authority to adjudicate a Circuit-wide class ............................................... 3

    A.  This Court has subject matter jurisdiction. ................................................................. 3

    B.  A Section 524 injunction is not an "individual, court ordered injunction." ........... 4

    C.  *Crocker* and *Alderwoods* do not control and are unpersuasive............................7

    D.  Navient's argument that a district-wide class is inappropriate is illogical. ........... 8

II.   Woodard's claims in this adversary proceeding are not subject to arbitration. .................. 9

    A.  This Court has discretion not to require arbitration of a claim to enforce the
        discharge injunction. ............................................................................................... 9

    B.  Navient has waived its right to arbitration through litigation conduct. ................ 11

III.  The Court should likewise decline to entertain the class action waiver. .......................... 12

    A.  The class action waiver is unenforceable outside arbitration under the express
        language of the promissory note. .......................................................................... 12

    B.  The class action waiver is unenforceable for policy reasons. ............................... 16

IV.  The class satisfies Rule 23(a). ....................................................................................... 19

    A.  Woodard's claims are typical of the claims of class members. ........................... 19

    B.  Woodard is an adequate class representative ....................................................... 21

    C.  Plaintiff's counsel are adequate class counsel. .................................................... 22

V.   The class satisfies Rule 23(b). ....................................................................................... 25

    A.  Rule 23(b)(1)......................................................................................................... 26

    B.  Rule 23(b)(2)......................................................................................................... 28

    C.  Rule 23(b)(3)......................................................................................................... 31

        i.   Common issues predominate and the class is ascertainable. .................... 31

        ii.  The class action is the superior method of resolution............................. 33

CONCLUSION.................................................................................................................. 35

3716004v.1

## TABLE OF AUTHORITIES

*In re Ajasa*,
    627 B.R. 6 (Bankr. E.D.N.Y. 2021) ..........................................................................5

*Alderwoods Group, Inc. v. Garcia*,
    682 F.3d 958 (11th Cir. 2012) ............................................................................7, 8

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) ...................................................................................19

*In re Am. Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988) .....................................................................17, 18, 19

*Anderson v. Credit One Bank, N.A.*,
    884 F.3d 382 (2d Cir. 2018) ....................................................................................10

*In re Anderson*,
    641 B.R. 1 (Bankr. S.D.N.Y. 2022) ..............................................................4, 5, 6, 7, 8

*In re Belton v. GE Capital Retail Bank*,
    961 F.3d 612 (2d Cir. 2020), *cert. denied sub nom. GE Cap. Retail Bank v.
    Belton*, 141 S. Ct. 1513, 209 L. Ed. 2d 252 (2021) ...................................................7

*In re Belton*,
    No. 12-23037 (RDD), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014) .........10

*Bessette v. Avco Fin. Servs., Inc.*,
    230 F.3d 439 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) ...........5

*Bock v. Salt Creek Midstream, LLC*,
    2020 WL 5640669 (D. N.M. 2020) ................................................................15, 19

*Bock v. Salt Creek Midstream, LLC*,
    No. Civ. No. 19-1163, 2020 WL 3989646 (D. N.M. July 15, 2020) .......................15

*Bund v. Safeguard Properties, LLC*,
    2018 Wl 5112642 (W.D. Wash. Oct. 19, 2018) ......................................................25

*Caban v. J.P. Morgan Chase & Co.*,
    606 F. Supp. 2d 1361 (S.D. Fla. 2009) ...................................................................18

*In re Cano*,
    410 B.R. 506 (Bankr. S.D. Tex. 2009) ...........................................................5, 17, 18

*Cope v. Let's Eat Out, Inc.*,
    F.R.D. 544, 556 (W.D. Mo. 2017) ...........................................................................31

3716004v.1

*Crocker v. Navient Solutions, LLC* (*In re Crocker*),
  941 F.3d 206 (5th Cir. 2019) ................................................................7, 8, 11

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
  2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) ........................................................21

*DuBois v. Ford Motor Credit Co.*,
  276 F.3d 1019 (8th Cir. 2002) ............................................................................5

*Falco v. Farmers Ins. Groups*,
  No. 4:12-CV-00134-BCW, 2014 WL 11394453 (W.D. Mo. June 19, 2014),
  *aff'd sub nom. Falco v. Farmers Ins. Grp.*, 795 F.3d 864 (8th Cir. 2015) ..............................28

*In re Haynes*,
  2014 WL 3608891 (Bankr. S.D.N.Y. 2014) ....................................................4, 5, 9

*Matter of Henry*,
  944 F.3d 587 (5th Cir. 2019) ............................................................................10

*Hilton v. Wright*,
  235 F.R.D. 40 (N.D.N.Y. 2006).........................................................................27

*Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*,
  102 F.R.D. 183 (N.D. Ohio 1984) ....................................................................24

*Jones v. NovaStar Fin., Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009)......................................................................26

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016)...........................................................................27

*Knepp v. Educ. Fin. Servs.*,
  No. AP 18-01389 (VFP), 2018 WL 11199014 (Bankr. D.N.J. Dec. 26, 2018)......................10

*Kurczi v. Eli Lilly & Co.*,
  160 F.R.D. 667 (N.D. Ohio 1995) .....................................................................24

*Local Loan Co. v. Hunt*,
  292 U.S. 234 (1934).........................................................................................34

*In re May*,
  595 B.R. 894 (Bankr. E.D. Ark. 2019) ..............................................................16

*Mazloom v. Navient Solutions, LLC*,
  Adv. No. 20-80033-6 (Bankr. N.D.N.Y. March 9, 2021)................................22, 23

*McMillion v. Rash Curtis & Assocs.*,
  2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ....................................................30

iv

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022) ................................................................................11

*Matter of Nat'l Gypsum Co.*,
118 F.3d 1056 (5th Cir. 1997) ...........................................................5, 10, 28

*Nelson v. Wal-Mart Stores, Inc.*,
245 F.R.D. 358 (E.D. Ark. 2007).................................................................30

*Orduno v. Pietrzak*,
932 F.3d 710 (8th Cir. 2019) .......................................................................32

*In re Potash Antitrust Litigation*,
159 F.R.D. 682 (D. Minn. 1995)..................................................................31

*Raffin v. Medicredit, Inc.*,
2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ..................................................30

*Ranzy v. Extra Cash of Texas, Inc.*,
No. Civ-09-3334, 2011 WL 13257274 (S.D. Tex. Oct. 14, 2011) ....................15, 19

*Reyes v. Julia Place Condominiums*,
2015 WL 5012930 (E.D. La. Aug. 20, 2015) ..............................................30

*In re Rivers*,
No. 03-05671, 2010 WL 5375950 (Bankr. S.D. Miss. Dec. 22, 2010) .......12, 13, 19

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) .........................................................22

*Sandoval v. M1 Auto Collisions Centers*,
309 F.R.D. 549 (N.D. Cal. 2015).................................................................22

*In re Schultz*,
615 B.R. 834 (Bankr. D. Minn. 2020) .....................................................28, 34

*In re Simmons*,
288 B.R. 737 (Bankr. N.D. Tex. 2003).........................................................20

*Stifel, Nicolaus & Co. Inc. v. Freeman*,
924 F.2d 157 (8th Cir. 1991) .......................................................................11

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
79 F.R.D. 246 (N.D. Cal. 1978)...................................................................24

*Todd v. Tempur-Sealy Int'l, Inc.*,
2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ............................................22

*In re Union Pacific R.R. Employment Practices Litigation*,
  No. MDL 1587, 803CV437, 2005 WL 1027078 (D. Neb. Mar. 31, 2005) ............................30

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..............................................................................................................30

*In re Walker*,
  650 F.3d 1227 (8th Cir. 2011) ......................................................................................21, 22

**Statutes and Court Rules**

11 U.S.C. § 105(a) ...................................................................................................... *passim*

11 U.S.C. § 523(a)(8)........................................................................................20,. 25, 29

11 U.S.C. § 524(a) ...................................................................................................... *passim*

11 U.S.C § 727...............................................................................................................3, 4, 5

11 U.S.C § 1328(a)(2)............................................................................................................20

28 U.S.C. § 157.......................................................................................................................4

28 U.S.C. § 1334(b) ............................................................................................................3, 4

FDCPA.........................................................................................................................19, 30

Federal Arbitration Act § 4 ..................................................................................................10

Fed. R. Bankr. P. 4004(f)........................................................................................................7

Fed. R. Bankr. P. 7023 ................................................................................................ *passim*

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Fed. R. Civ. P. 11 ................................................................................................................24

**Other Authorities**

Kara Bruce, *The Debtor Class*, 88 Tul. L. Rev. 21 (Nov. 2013) ......................................6

*7A Fed. Prac. & Proc. Civ.* § 1769.1 (3d ed.) ....................................................................22

*Newberg on Class Actions* § 3:75 (5th ed) ........................................................................23

Restatement (Second) of Contracts §§ 202, 206 (1981) ....................................................12

3716004v.1

Plaintiff Kenneth Joseph Woodard ("Plaintiff"), by and through undersigned counsel, hereby replies to the opposition [Dkt. 20] ("Opposition") filed by Defendants, Navient Solutions, LLC and Navient Credit Finance Corporation (collectively, "Navient" or "Defendants") to Plaintiff's Motion for Class Certification ("Class Certification Motion") [Dkt. 14].

## <u>INTRODUCTION</u>

In its Opposition, Navient does not challenge either numerosity or commonality, which is effectively an admission that thousands of putative class members across the Eighth Circuit have been affected by Navient's common practice of collecting on non-Title IV loans post-discharge. If Plaintiff's legal analysis under Section 523(a)(8) is correct, Navient has committed, and is still committing, grotesque violations of the Bankruptcy Code. Indeed, in its settlement in the Fifth Circuit, Navient has indicated that a fair remedy would be to acknowledge the loans were discharged and return to the debtors all funds collected post-discharge. Yet, unless this Court certifies a class, Navient will continue its violations of the Bankruptcy Code in the Eighth Circuit unabated. This Court should exercise the discretion granted under Rule 7023 to certify this class, remedy Navient's violations of the Bankruptcy Code, and deliver relief to injured debtors across the Eighth Circuit.

The points Navient does raise in its Opposition are unavailing. This Court undeniably has subject matter jurisdiction over this core bankruptcy proceeding and may likewise adjudicate the claims of putative class members within this Circuit. The Section 524 injunction is statutory, not individually-crafted, and the bankruptcy courts' equitable powers under Section 105 allow them to enforce Section 524 to ensure the debtors' fresh start, which is the heart of the Bankruptcy Code. To require individual debtors to return to the district or *judge* (who may or may not still be active on the bench) for individualized relief undermines that core purpose.

1

Nor have Plaintiff or class members waived their right to a class action—the plain language of the class action waiver, contained in the arbitration clause, affirms it only applies to claims raised in arbitration. Navient has waived its ability to seek arbitration through its litigation conduct—and in any event, these core bankruptcy claims are not arbitrable. And as noted above, the bankruptcy court's powers to remedy creditor abuses and protect the fresh start would be improperly limited by enforcing a class action waiver to the benefit of a contumacious creditor.

Plaintiff's claims are also typical of the class, which is not a demanding test, and which tends to merge with commonality, which Navient does not challenge. Plaintiff's status as a chapter 13 debtor has no effect on the overarching question of whether the loans at issue are non-dischargeable under Section 523(a)(8). Navient further concedes that Plaintiff's loan program represents over 72% of the putative class members—it is hard to imagine a more "typical" plaintiff.

Both Woodard and his counsel also adequately represent the class. He has no class conflicts, and his counsel have worked steadfastly in this and other litigation to pursue relief for similarly situated debtors. The other pending class actions are not in conflict with the class sought to be certified here—and if any overlap arises it can and will be solved with a carve out.

Navient's arguments that Plaintiff has not shown the requirements for an injunctive relief class must also fail. If Navient is right and 94 different judges around the country should weigh whether its conduct is legal, the risk of inconsistent results is nearly certain. That is what Rule 23(b)(1) is intended to prevent. And monetary relief here does not predominate over the injunctive relief sought—nor is the injunctive relief sought "successive" to the discharge injunction in place. If Plaintiff and class members succeed, they will obtain an order requiring Navient to stop collecting on their discharged debts. That is not what is happening now; the injunctive and declaratory relief sought is not illusory.

2

3716004v.1

A class action is also the superior method to resolve this matter. Common issues—namely, the legality of Navient's common policy of collecting on non-Title IV loans after discharge and the proper relief to remedy those violations—predominate and are more important than any individualized issues. The class can be ascertained from Navient's records, and Navient's purported laundry list of irrelevant questions supporting hypothetical defenses does not defeat Plaintiff's showing of predominance, ascertainability, and the superiority of this class action.

The Court should certify the class.

## ARGUMENT

### I.      This Court has authority to adjudicate a Circuit-wide class.

Plaintiff addressed at length this Court's jurisdiction over the matter and its authority to adjudicate a Circuit-wide class in its Class Certification Motion. *See* Dkt. 14 ("Mot.") at 47-57. Plaintiff incorporates as if set forth fully here those arguments. Rather than rehash them completely, Plaintiff responds now to certain points raised by Navient in its Opposition to the Class Certification Motion. *See* Dkt. 20 ("Opp.") at 4-10. Navient contends that (1) the bankruptcy discharge injunction is "an individual, court ordered injunction;" (2) only the issuing court may enforce its discharge; (3) the Fifth and Eleventh and Second Circuits have endorsed this view. None of these points undermine that this Court has both jurisdiction over this matter as a core bankruptcy proceeding and that it can adjudicate a Circuit-wide class in the Eighth Circuit.

### A.  This Court has subject matter jurisdiction.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) which gives the district court jurisdiction over all civil proceedings arising under Title 11. The enforcement of the discharge injunction here is a core bankruptcy matter that arises under 11 U.S.C §§ 727, 524 and 105. *See also* Mot. at 47-50. Navient appears to at least agree on this point. *See* Opp. at 4 n.7

3

("Defendants note that neither they nor the cases cited above suggest that the bankruptcy court lacks *statutory subject-matter* jurisdiction to interpret and enforce discharge orders entered by courts.") Thus, there is no serious question that this Court has jurisdiction over *Plaintiff's claim*.[1]

### B.   A Section 524 injunction is not an "individual, court ordered injunction."

Navient first acknowledges that under Section 524(a)(2), the discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect" any debt for which the debtor received a discharge. 11 U.S.C. § 524(a)(2). It nonetheless concludes that it is "an individual, court ordered injunction" *see* Opp. at 4, and later states that while the injunction "may be a creature of statute, [] it comes into existence only through issuance of an order by a court in a particular bankruptcy case" *id.* at 7. But, as recognized by many courts, "the discharge order entered in individual, consumer bankruptcy cases is a national form from which the bankruptcy courts may not deviate." *In re Anderson*, 641 B.R. 1, 17 (Bankr. S.D.N.Y. 2022) (citing additional cases). It is a stretch to argue that the statutory injunction that automatically applies as a result of a form order from which the issuing court may not deviate is an "individual" court-specific injunction.[2]

Navient next argues that Section 524 does not create a private right of action, and its enforcement lies solely in a bankruptcy court's contempt powers. But courts recognize that a discharge injunction violation, although sounding in contempt, can be enforced in two ways: (1) a

---

[1] *See also In re Anderson*, 641 B.R. 1, 19 (Bankr. S.D.N.Y. 2022) ("The proper focus here, then, is not on this Court's jurisdiction, which is clear under 28 U.S.C. §§ 157(a)-(b) and 1334(b), but, rather, on whether the putative class should be certified under Fed. R. Civ. P. 23, incorporated by Fed. R. Bankr. P. 7023[.]") (footnote and citation omitted).

[2] *See also In re Haynes*, 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. 2014) ("There is, however, a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge under § 727 of the Bankruptcy Code.").

motion for contempt; and (2) a declaratory judgment action. *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997); *see also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000).

As Plaintiff pointed out in his Class Certification Motion, although some courts frame the relevant question as whether Section 524 creates a private right of action[3]—others have determined that is not the relevant question and instead found that Section 105 of the Bankruptcy Code empowers the bankruptcy court to exercise its equitable powers as necessary or appropriate to carry out other Code provisions—including Section 524. *See In re Haynes*, 2014 WL 3608891, at *9 ("[t]here should be no issue here, either, that Section 105(a) is properly exercisable to enforce the discharge under Sections 524(a) and 727 of the Bankruptcy Code");*see also Bessette*, 230 F.3d at 444-46; *In re Cano*, 410 B.R. 506, 537 (Bankr. S.D. Tex. 2009) (noting that "[t]he 'private right of action' argument is a red herring" and further that Section 105 empowered plaintiffs to bring a cause of action "for violations of Bankruptcy Code provisions that create or enforce important rights."). Notably, Navient does not argue that *Plaintiff* cannot bring his claim before this Court, implicitly acknowledging that a declaratory judgment action to enforce a Section 524 discharge injunction brought in an adversary proceeding is, at least, an appropriate vehicle for *Plaintiff* to seek individual relief.

Given that Plaintiff himself can seek relief in this adversary proceeding from this Court, the question is no longer jurisdictional, but rather "whether the putative class should be certified under Fed. R. Civ. P. 23, incorporated by Fed. R. Bankr. P. 7023." *In re Anderson*, 641 B.R. at 19; *see also Bessette*, 230 F.3d at 446; *In re Ajasa*, 627 B.R. 6, 26 (Bankr. E.D.N.Y. 2021) (collecting

---

[3] This is a debate which the Eighth Circuit has "decline[d] to enter[.]" *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1024 n.5 (8th Cir. 2002).

Case 21-08023-TLS    Doc 25    Filed 09/13/22    Entered 09/13/22 12:32:43    Desc Main
Document      Page 12 of 42

cases where nationwide settlements of class actions asserting discharge injunction violates were

approved by bankruptcy and district courts and noting "this Court's subject matter jurisdiction to

consider these Plaintiffs' claims, including their request to proceed as class representatives in a

Rule 23 class, should not be limited by the scope of that request -- including a request to proceed

as a nationwide class. If the Plaintiffs meet their burden as a nationwide class, then they will

prevail, and an appropriate class will be certified -- and if they do not, then a class will not be

certified."). *See generally*, Kara Bruce, *The Debtor Class*, 88 Tul. L. Rev. 21, 51-71 (Nov. 2013).In

fact, Navient's reliance on the Second Circuit's *Anderson* decision is interesting, given that on

remand Judge Drain certified the class. *See* Opp. at 6, 8 (citing *Anderson v. Credit One Bank, N.A.*,

884 F.3d 382 (2d Cir. 2018)); *see In re Anderson*, 641 B.R. at 63 (certifying class). Navient noted

that the Second Circuit in *Anderson* observed that "the discharge injunction is an order issued by

the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise

to enforce it." *Id.* at 391.

But the only issue the Second Circuit faced in *Anderson* was whether the debtor's discharge

injunction claims were *arbitrable*; not whether a bankruptcy court who did not issue the injunction

could enforce it. The court stated in doing so,

> The successful discharge of debt is not merely important to the Bankruptcy Code,
> it is its principal goal. An attempt to coerce debtors to pay a discharged debt is thus
> an attempt to undo the effect of the discharge order and the bankruptcy proceeding
> itself. Because the issue strikes at the heart of the bankruptcy court's unique powers
> to enforce its own orders, we affirm the district court decision below.

*Id.* at 386. There is at very least a plausible reading that "the bankruptcy court's unique powers"

that the Second Circuit referred to in *Anderson* were the general powers of *a* bankruptcy court—

in particular, compared to an arbitrator—and not any specific *individual* bankruptcy judge. In fact,

the *Anderson* court twice noted that "[t]he fact that Anderson's claim comes in the form of a

6

putative class action does not undermine this conclusion" *id.* at 390; and "we observe that the class action nature of this case does not alter our analysis" *id.* at 391. Navient's interpretation stretches the parameters of *Anderson* beyond the question it addressed.

In fact, no Second Circuit decision has determined whether a bankruptcy court may entertain a nationwide class action for discharge violations. Navient's contention that "the Second Circuit has "strongly signaled" support for the view that it cannot is based on dicta in *In re Belton v. GE Capital Retail Bank*, 961 F.3d 612 (2d Cir. 2020), *cert. denied sub nom. GE Cap. Retail Bank v. Belton*, 141 S. Ct. 1513, 209 L. Ed. 2d 252 (2021). But, like in *Anderson*, the only question properly before the Second Circuit in *Belton* was the arbitrability of the debtor's cause of action to enforce the discharge order. The Court specifically noted, "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings[.]" *Id.* at 617. To the extent the Court opined on whether such a class ought to be permitted, it did so in dicta. *See id.* at 617-18.

**C. *Crocker* and *Alderwoods* do not control and are unpersuasive.**

Plaintiff, anticipating Navient's reliance on *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019), addressed it at length in its Class Certification Motion. *See* Mot. at 55-58. In doing so, Plaintiff also addressed the Eleventh Circuit's decision in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) on which *Crocker* relied. *See* Mot. at 56-57. Plaintiff incorporates those arguments as if set forth fully here.

Navient unsurprisingly argues that the Court should follow both *Crocker* and *Alderwoods*. But neither is binding nor persuasive. Not only did *Crocker* not even address Rule 7023, which expressly allows class actions, its effect is also to invalidate Bankruptcy Rule 4004(f) which specifically allows a party to register a discharge order in another district and seek enforcement of

7

that order. In fact, one of the absurd results of *Crocker* was that one of the original named plaintiffs who had received a discharge in a bankruptcy court in Virginia but resided in Texas at the time of the suit was ordered to return to Virginia to get relief. *Crocker*, like Navient here, also stretched the language of the Second Circuit's *Anderson* opinion to the effect that the Second Circuit "has limited enforcement of discharge injunctions through contempt proceedings to the originating court." 941 F.3d at 216. As explained above, that conclusion was not reached in *Anderson*, and the Second Circuit repeatedly noted the class action nature of the dispute did not affect its analysis.

Insofar as *Crocker* and here, Navient, rely on *Alderwoods,* that case did not involve a class of debtors seeking to enforce a Section 524 discharge injunction. In *Alderwoods*, owners of a cemetery that was faced with a state court class action in Florida for failure to keep proper records of the location of the deceased relatives of the plaintiffs, brought a proceeding in bankruptcy court in Florida to obtain a declaration that the Florida state court claims had been discharged in its Delaware bankruptcy. The Eleventh Circuit held that the Florida bankruptcy court did not have jurisdiction and that the matter should be brought in Delaware. It was not asked to consider whether a class action should be allowed under Bankruptcy Rule 7023 *where all the members of the class allege the exact same violation of Section 524's statutory injunction* and the standard discharge order.

The Court should decline to follow *Crocker* and *Alderwoods* here.

### D.  Navient's argument that a district-wide class is inappropriate is illogical.

Navient goes one step further and argues that this Court ought not to adjudicate even a *district-wide* class, taking the logic of its "individuality" of the discharge order argument to its inevitable conclusion, and exposing the absurdity of this entire argument. Opp. at 13-14. Navient argues "[e]ach bankruptcy judge of this District is charged with the responsibility of adjudicating

8

the cases pending before him or her. . . . In other words, the same concerns that prohibit a bankruptcy judge in this district from enforcing the discharge injunctions entered in other districts apply with equal force to the enforcement of discharge injunctions entered by other judges within this district." *Id.* Yet the irrationality of this conclusion is obvious, based on statistics set forth by Navient. For example, according to Navient's own chart, in this district 74 out of the 229 (or 32%) of the discharges at issue were issued by Judge Timothy J. Mahoney who is no longer active on the bench. *See id.* at 4. Thus, Navient is forced to acknowledge in a footnote that at least those debtors would have a new judge consider their discharge violation action. *Id.* at 14, n.7.

This statistic—and this reality—simply affirms that bankruptcy courts ought to be *generally* empowered under Section 105(a) to enforce statutory injunctions—as a means of taking steps that are "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See, e.g.*, *In re Haynes*, 2014 WL 3608891, at *9 (rejecting the district-wide approach and finding nationwide jurisdiction for enforcement of discharge injunctions). This Court should reject Navient's narrowly construed view that individual judges have an individualized, case-specific interest in enforcing specific discharge orders and the resulting statutory injunction beyond the general interest of bankruptcy courts in upholding the Bankruptcy Code and the debtors' fresh start. This Court is just as well-positioned to address the needs of putative class members as other judges in this Circuit, and it would be woefully inefficient to require each individual bankruptcy judge in this Circuit to address Navient's contumacious violations of the Bankruptcy Code.

**II.      Woodard's claims in this adversary proceeding are not subject to arbitration.**

**A. This Court has discretion not to require arbitration of a claim to enforce the discharge injunction.**

In its Opposition, for the first time, Navient indicated an intent to enforce the arbitration provision in Woodard's promissory note. *See* Opp. at 11 ("Navient hereby elects to arbitrate

9

Plaintiff's claims in this case."). To demand arbitration pursuant to § 4 of the Federal Arbitration

Act, Navient was required to "petition [this Court] for an order directing that such arbitration

proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Typically, a party would do

that by filing a motion to compel arbitration. Navient did not do that here because it is well

established that this court has discretion not to require arbitration of an action seeking enforcement

of the discharge injunction.

Multiple Circuit courts have held "that bankruptcy courts have discretion to refuse to

compel arbitration in proceedings seeking enforcement of a discharge injunction." *Matter of

Henry*, 944 F.3d 587, 591 (5th Cir. 2019); *see also In re Anderson*, 884 F.3d 382, 389-90 (2d Cir.

2018) ("[A]rbitration of a claim based on an alleged violation of Section 524(a)(2) would seriously

jeopardize a particular core bankruptcy proceeding."). As the Fifth Circuit held, in the context of

an action to enforce the discharge injunction which is "derived entirely from the federal rights

conferred by the Bankruptcy Code," a bankruptcy court has discretion to "assess whether

arbitration would be consistent with the purpose of the Code, including the goal of centralized

resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from

piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders."

*Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1069 (5th Cir. 1997).

In this case, Navient is alleged to have violated an injunction issued by the bankruptcy

court. Allowing Navient to compel arbitration of that claim would deprive bankruptcy courts of

the ability to enforce their own orders. Not surprisingly, each bankruptcy court asked to consider

this issue has exercised its discretion to refuse to compel arbitration. *See, e.g.*, *In re Belton,* No.

12-23037 (RDD), 2014 WL 5819586, at *1 (Bankr. S.D.N.Y. Nov. 10, 2014); *Knepp v. Educ. Fin.

Servs.*, No. AP 18-01389 (VFP), 2018 WL 11199014, at *8 (Bankr. D.N.J. Dec. 26, 2018).

10

**B.  Navient has waived its right to arbitration through litigation conduct.**

In addition to the fact that this Court has discretion not to enforce the arbitration provision, Navient has waived any right to compel arbitration through its litigation conduct in this case. The Supreme Court recently revisited the standard for waiver of the right to arbitrate through litigation conduct. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). In *Sundance*, the Supreme Court reversed the Eighth Circuit Court of Appeals, holding that a litigant seeking to avoid enforcement of an arbitration clause is not required to demonstrate prejudice caused by the moving party's litigation conduct. *Id.* Instead, a court's inquiry on waiver should ask only whether the party seeking arbitration "[1] knowingly relinquish[ed] the right to arbitrate by [2] acting inconsistently with that right?" *Id.* at 1714.

Navient is aware of the contents of the promissory note it drafted, including its arbitration provision. Indeed, Navient has sought to enforce parallel provisions in other cases, such as *Crocker*. But here, Navient has litigated this case for ten months without previously demanding arbitration, including: filing an Answer without any reference to arbitration [Dkt. 6]; filing a Joint Preliminary Pretrial Statement expressly consenting to the entry of a final judgment by the bankruptcy judge [Dkt. 8]; and propounding discovery to the Plaintiff, including requesting a deposition. Navient's actions are inconsistent with preserving the right to arbitration. Indeed, even under the Eighth Circuit's prior test that required evidence of prejudice, Navient has waived its right to arbitrate here. *See, e.g.*, *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991) (six-month delay in moving to compel arbitration, plus engaging in discovery on arbitrable claims, was inconsistent with the right to arbitrate).

11

**III.    The Court should likewise decline to entertain the class action waiver.**

In the absence of arbitration, there is no justification for enforcing the class action waivers. The text of Woodard's promissory note only references the class action waiver in the context of arbitration. And Navient itself recognizes that the class action waiver only applies if the parties are arbitrating Woodard's claims. *See* Opp. at 10-11 (arguing that the class action waiver applies "***upon invocation of either party's election to arbitrate issues regarding his loan***") (emphasis added). To permit such a waiver outside the context of arbitration is not just a misinterpretation of the promissory note but would undermine the authority of this Court and threaten the power, purpose, and efficacy of the judicial system.

**A. The class action waiver is unenforceable outside arbitration under the express language of the promissory note.**

The text of the promissory note does not justify enforcing the class action waiver in litigation, as the waiver is only referenced in the context of arbitration. Under general contract principles, courts must interpret contracts to give effect to the parties' intentions. *See* Restatement (Second) of Contracts § 202 (1981). "Words and other conduct are interpreted in the light of all the circumstances and "[a] writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." *Id.* When a contract is ambiguous, the court will apply the reading that is most favorable to the non-drafting party. *See* Restatement (Second) of Contracts § 206 (1981).

Applying this general framework, the court in *In re Rivers*, No. 03-05671, 2010 WL 5375950 (Bankr. S.D. Miss. Dec. 22, 2010) held that a similar class action waiver was unenforceable outside of arbitration.[4] In that case, the court was required to decide whether it

---

[4] It should be noted that Mississippi law was applied by the court; however, it is not inconsistent with the general contract principles already stated.

12

should enforce the purported class action waiver, contained in the arbitration provision, when the parties did not seek to enforce the arbitration provision as a whole. *Id.* at *2.[5] The court determined that, because of the waiver's location in the arbitration provision and its failure to indicate whether it applied to litigation as well as arbitration, the waiver standing alone was ambiguous and should be construed against the party that provided its text—the defendant. *Id.* at *3. The court then looked to the arbitration provision as a whole to ascertain the parties' intentions and concluded that the class action waiver was limited to arbitration because the sentences preceding it discussed the plaintiff's waiver of the right to litigate claims and the following sentences outlined the arbitrator's authority and the defendant's right to litigate claims without waiving the right to compel arbitration. *Id.* Finally, the court held that because the plaintiff was suing the defendant "solely for violations of bankruptcy law[,]" the purported class action waiver did not apply because the claims did not fall within the scope of the provision, which was limited to "any claim arising from or relating to [the Contract]." *Id.* at *3-4. In light of the foregoing, the court found it unnecessary to determine whether class action waivers were enforceable. *Id.* at *4.

Woodard's class action waiver bears striking resemblance to that in *Rivers*. As in *Rivers*, Woodard's note contains the class action waiver only in the arbitration agreement.[6] It likewise

---

[5] In that case, the relevant portions of the contract stated:

> ARBITRATION: All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall by resolved by binding arbitration by one arbitrator selected by you with my consent.
>
>      * * *
>
> **I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Contract.**

*Id.* at *1 (emphasis in original).

[6] The Woodard Note, in relevant part:

13

references the waiver in the context of arbitrating a claim and the surrounding sections discuss the

rights of the parties to elect to arbitrate and the authority of the arbitrator. Indeed, the sentence to

which Navient cites, which discusses the authority to resolve Claims on a "class action basis" also

provides that the arbitrator shall not have authority to consolidate or join claims, further clarifying

that the entire sentence concerns the authority of the arbitrator, not a court. And more generally, it

would be a particularly odd way to phrase a waiver of judicial rights for parties to announce that

"[t]here shall be no authority to have any Claims resolved on a class action basis;" parties do not

normally announce limitations on the power of the judiciary in this fashion. But it is a common

way to discuss arbitration, which is a matter of contract not public law.

By its own terms, the class action waiver only applies if the parties are going "to arbitrate

a Claim," and therefore should not apply where the parties litigate their claims. Navient

---

Arbitration Provision.

The provision covers any claim, dispute, or controversy (whether in contract, regulatory, tort or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to this Note or my application for a loan or advertisements, promotions, or oral or written statements related to this Note or the program under which such a loan is or would be made, the relationships which result from this Note (including to the full extent permitted by applicable law, relationships with third parties who are not signatories of this Note) or the validity, enforceability or scope of this Arbitration Provision or the entire Note (collectively, "Claim"). Any dispute concerning a Claim shall be resolved, upon the election of you or us or any third party, by binding arbitration under the applicable code of procedure (as in effect at the time the Claim is filed) of the Arbitration Administrator I select as provided above. A party who has asserted a claim in a lawsuit in court may elect arbitration with respect to any Claim(s) subsequently asserted in that lawsuit by any other party or parties. There shall be no authority or right to have any Claims resolved on a class action basis and the arbitrator may only decide your or our Claim(s) and may not consolidate or join the claims of other persons who have similar claims. [Doc. 20-1 at 3].

Navient's motion, without explanation, cites only the first half of this last sentence.

acknowledges this in its briefing.[7] Despite Navient's cheeky attempt to "elect arbitration" in its opposition to the Class Certification Motion, as noted above Navient has waived its right to arbitration in this case through its litigation conduct. Because the parties are not arbitrating these claims, the class action waiver has no applicability and should not be enforced.

Notably, the two unpublished cases cited by Navient that purportedly support enforcing a class action waiver in an arbitration clause even where the parties are not arbitrating are readily distinguishable.[8] In *Bock v. Salt Creek Midstream, LLC*, the Plaintiff did not even brief its opposition to this argument, despite being given multiple opportunities, and the Court resolved the issue pursuant to a local rule that "failure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument." 2020 WL 3989646, at *15 (D. N.M. 2020).[9] In *Ranzy v. Extra Cash of Texas, Inc.*, the contract at issue contained class action waivers not only within the arbitration clause, but also in separate sections of the contract with separate headings. 2011 WL 13257274 at *4 (S.D. Tex. 2011). Indeed, the *Ranzy* Court specifically noted that the plaintiff's argument that "the class action waiver clauses clearly only apply to class arbitration and, without an arbitration forum, the class action waiver provisions are no longer valid" would be a "plausible argument if the waivers contained within the arbitration clauses were the *only* waivers in the agreement." *Id.* Thus, the *Ranzy* court's analysis

---

[7] *See* Opp. at 10-11 (arguing that the class action waiver applies "***upon invocation of either party's election to arbitrate issues regarding the loan***") (emphasis added).

[8] *See* Opp. at 12-13 (citing *Bock v. Salt Creek Midstream, LLC*, No. Civ. No. 19-1163, 2020 WL 3989646 (D. N.M. July 15, 2020); *Ranzy v. Extra Cash of Texas, Inc.*, No. Civ-09-3334, 2011 WL 13257274, at *8 (S.D. Tex. Oct. 14, 2011)).

[9] *See also Bock v. Salt Creek Midstream, LLC*, 2020 WL 5640669, at *9 (D. N.M. 2020) ("[T]he Court agrees with the Magistrate Judge that Plaintiffs have forfeited their opportunity to oppose the waiver on the merits.").

15

would support holding that the class action waiver in Woodard's promissory note, which is contained only in the arbitration provision, is no longer valid since the parties are not arbitrating.

Where contract drafters intend to preclude class actions in Court, they are readily capable of using clear language that accomplishes that purpose.[10] Navient, as drafter of this promissory note, did not use such clear language here. The class action waiver in Woodard's promissory note in is inapplicable to Woodard's claims in this litigation.

**B.  The class action waiver is unenforceable for policy reasons.**

Apart from that the class action waiver is inapplicable by its own terms, it should not be enforced in this bankruptcy for policy reasons. In arbitration, parties have broad latitude to contract to resolve their disputes pursuant to whatever procedures they agree to. By comparison, enforcing a class action waiver in bankruptcy litigation raises broad policy concerns. Though Rule 7023 provides a procedural right as opposed to a substantive right, the purported waiver nonetheless attempts to limit the bankruptcy courts' abilities to control their respective dockets. Such a waiver has the potential to undermine effective resolution of claims and judicial efficiency. Moreover, if a class action waiver is enforceable in bankruptcy litigation, it would raise uncertainty as to what other aspects of bankruptcy procedure could be contracted out of prior to a dispute arising. Such a holding is contrary to the rights and powers afforded to the bankruptcy court.

These risks are particularly acute in this adversary proceeding asserting core bankruptcy claims, where enforcing this class action waiver would undermine the purposes of the Bankruptcy Code and frustrate the Court's power to compel enforcement of its orders. Allowing this class

---

[10] *See, e.g.*, *In re May*, 595 B.R. 894, 897 (Bankr. E.D. Ark. 2019) (enforcing class action waiver of FDCPA claims based on a provision that read "Plaintiffs 'AGREE[D] NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.'").

16

action to proceed is urged under the general purposes of bankruptcy law, the more particularized purposes of the bankruptcy statutes presently invoked, and the purposes of the class action device under Rule 23.

Viewing bankruptcy law in the most simplified manner possible, the overarching purpose favors class actions. At its fundamental core, "[t]he principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned." *In re Am. Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988) (citing *Butner v. United States*, 440 U.S. 48 (U.S. 1979)). Though this primary purpose does not necessitate the use of class action procedures or automatically connote that such a proceeding is appropriate, it is a consideration that should remain at the forefront of bankruptcy decisions.

Class actions also further the purposes of specific statutory remedies provided by the Bankruptcy Code—of relevance here, the relief afforded under Section 105. The Supreme Court's opinions "stand for the proposition that an underlying purpose of § 105 is to afford bankruptcy courts the authority to avoid protracted and multifaceted litigation when the inevitable result of that litigation can be provided with one stroke pursuant to § 105." *In re Cano*, 410 B.R. 506, 541 (Bankr. S.D. Tex. 2009) (citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). "Avoiding inefficient and unnecessary litigation is a factor of primary importance in any equitable consideration, whether under inherent authority or § 105." *Id.* at 542. "The alternative to a class action … would be thousands of individual proceedings filed before dozens of different judges in multiple jurisdictions," an obviously inefficient result. *Id.* at 541. Moreover, because Section 105 "requires the Court to fashion a remedy sufficient to ensure that debtors and creditors comply with the Code and court orders[, l]imiting parties to an inadequate remedy would contravene § 105's plain language and

17

congressional intent." *Id.* at 543. Thus, "[t]he use of § 105 to remedy alleged violations of Bankruptcy Code provisions, Rules, and court orders, may be particularly appropriate in the context of a nationwide class action." *Id.* at 541.

Finally, Rule 7023's purposes are served by allowing this class action to proceed before this Court. "Substantively, the class action permits the aggregation and litigation of many small claims that otherwise would lie dormant." *Am. Reserve Corp.*, 840 F.2d at 489. In this way, "the class action provides compensation that cannot be achieved in any other way; although the costs of litigation may consume much of the benefit, the device still serves a deterrent function by ensuring that wrongdoers bear the costs of their activities." *Id.* (citing *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 336 (1980)); *see also Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1368 (S.D. Fla. 2009) ("The very purpose of the class action mechanism is to allow small recoveries that would otherwise be precluded due to the complexity and cost of litigation.").

In this action, Plaintiff and putative class members seek relief for the abusive, deceptive, and harassing tactics employed by Navient in its illegitimate collection efforts. Though Plaintiff and class members may be entitled to damages as well as attorneys' fees and costs under Section 105 if their allegations are proven, they have not set forth special damages in the form of economic losses. As a result, Plaintiff runs the risk of a nominal monetary recovery, even if successful. If Plaintiff and other class members were forced to litigate their claims on an individual basis, they would essentially gamble their own liability for the burdensome expenses of litigation if their claims fail to prevail, with the possibility of an insignificant award if their allegations are proven. Given that the Plaintiff and the putative class members are former debtors, such a disproportionate risk would not warrant seeking redress. If Plaintiffs and others are forced to proceed in this manner,

18

"there might be no affordable universal redress for creditor bankruptcy abuses which could arise." *Id.* at 554 (quoting *In re Noletto*, 244 B.R 845, 850 (Bankr. S.D. Ala. 2000)). However, this risk is mitigated in a class action proceeding where court costs and attorneys' fees are spread amongst numerous individuals so that the risk of loss is proportionate to the potential recovery.

Neither of the cases cited by Navient involve bankruptcy cases, core claims under the Bankruptcy Code, or implicate the Bankruptcy Court's power under Section 105. *Compare Ranzy*, 2011 WL 13257274 (S.D.Tex.) (FDCPA claims asserted in federal district court) *and Bock*, 2020 WL 5640669 (D. N.M.) (FLSA claims asserted in federal district court) *with Rivers*, 2010 WL 5375950 (Bankr. S.D. Miss.) (putative class action of debtors alleging systematic bankruptcy abuses by mortgage servicing company). Navient should not be allowed to frustrate this Court's ability to enforce bankruptcy court orders under Section 105 through a class action waiver.

## IV.     The class satisfies Rule 23(a).

### A.  Woodard's claims are typical of the claims of class members.

"The test for typicality is not demanding."[11] As Navient acknowledges, "factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Here, all claims arise from Navient's common course of conduct in collecting on non-Title IV loans post-discharge. Navient notably does not even challenge commonality.

---

[11] 1 Newberg and Rubenstein on Class Actions § 3:29 (6th ed.). *See also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ("The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'") (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).

3716004v.1

Navient argues that, as a debtor who received a discharge under chapter 13, Woodard's claims will not be typical of those class members who received discharges under chapter 7, because the chapter 13 plans "may specify varying treatments for classes of creditors pursuant to a plan." But because Navient took the (legally indefensible) position that the debts at issue in this class action were non-dischargeable under § 523(a)(8), the putative class members' chapter 13 plans would not have affected their debts to Navient, which would have had to have been paid off in full in the chapter 13 plan or following the bankruptcy.[12] Indeed, Navient has produced absolutely no evidence in this case, nor has it attached to its opposition any evidence, showing that any class member obtained unique treatment for their private Navient loan through their chapter 13 plan. This lack of evidence is consistent with the fact that Navient represented that these loans were non-dischargeable across the board and insisted on payment in full regardless of which bankruptcy chapter a borrower sought relief under.

As to its loan program argument, the name Navient assigns to a loan program does not affect the loans at issue in this case – private loans provided for the purpose of attending a non-Title IV institution. Regardless of whether the loan is called a "Grad Excel" loan, a "Bar Study" loan, or a "Career Training" loan, if a private loan is provided for the purpose of attendance at a non-Title IV school or for a non-Title IV program, it is not excepted from discharge under 11 U.S.C. § 523(a)(8)(B). To the extent Navient has loan programs that include federal guarantees or federal or non-profit funds, debtors holding those loans are not members of the class *by definition*. Navient's argument that Woodard's loan program makes him atypical to represent the class is

---

[12] Section 1328, while providing a "super discharge" of certain debts that would not be dischargeable under any other chapter (*see, e.g.*, *In re Simmons*, 288 B.R. 737, 743 (Bankr. N.D. Tex. 2003)), expressly carves student loans out from the Chapter 13 discharge. 11 U.S.C. § 1328(a)(2).

particularly inapposite, however, as Navient admits that Woodard's Career Training loan program makes up over 72% of the proposed class.[13]

Finally, Woodard is not asserting undue hardship claims; he is asserting that the loans at issue in this class action were not non-dischargeable under § 523(a)(8) in the first instance. Nothing about this action will bar any debtor from later reopening their bankruptcy and asserting a claim of undue hardship based on their then-present circumstances, (*See, e.g.*, *In re Walker*, 650 F.3d 1227, 1231-32 (8th Cir. 2011)), if that debtor has a valid undue hardship claim.

### B.  Woodard is an adequate class representative

Although Navient purports to cite several criteria a class representative must meet to satisfy adequacy, all of them boil down to a single issue: "[t]he central component of class representative adequacy is the absence of conflicts of interest between the proposed representatives and the class." *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2019 WL 1418292, at *14 (W.D. Mo. Mar. 21, 2019) (citing 1 Newberg and Rubenstein on Class Actions § 3:54 (6th ed.)). Here, there is no conflict between Woodard's interests and the putative class's interests.

Navient's only arguments about Woodard's purported inadequacy are that he (1) executed a promissory note waiving the right to bring class claims in arbitration and (2) fails to pursue undue hardship claims. These arguments are woefully insufficient to show inadequacy of a class representative. The class action waiver argument was addressed above, as the plain language of the class action waiver provides that it does not apply in arbitration. Regardless, Woodard's execution of a standard form document prepared by the Defendant at the time he took out his loan does not create a conflict between Woodard and the class, as many class members will have signed the identical form language. And as to undue burden, Woodard has expressly not brought an undue

---

[13] *See* Opp. at 16 (showing that Career Training Loans make up 585 out of 802 loans, or 72.94%).

21

burden claim, and nothing that happens in this class action will bar any debtor from later reopening their bankruptcy and asserting a claim of undue hardship based on their then-present circumstances. *See, e.g.*, *In re Walker*, 650 F.3d 1227, 1231-32 (8th Cir. 2011). Woodard has focused this action on the forms of relief readily available in a discharge violation case – recognition of the discharge, injunction against further collections, restitution, penalties for violations, punitive damages, and attorney's fees. In general, a class representative's reasonable tactical decision to focus on those forms of relief typically awarded for discharge violation claims is not a basis to find their representation inadequate. *See, e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016) ("A strategic decision to pursue those claims a plaintiff believes to be most viable does not render her inadequate as a class representative.").

**C.  Plaintiff's counsel are adequate class counsel.**

Navient has argued that Plaintiff's Counsel cannot represent the proposed class due to purported conflicts of interest arising from another proposed class actions filed by the same counsel against Navient – *Mazloom v. Navient Solutions, LLC*, Adv. No. 20-80033-6 (Bankr. N.D.N.Y. March 9, 2021). Because the proposed class members do not have conflicting interests, as discussed below, Navient has not demonstrated that Plaintiff's counsel is inadequate.

The mere existence of parallel suits does not automatically create a conflict for Plaintiff's Counsel, especially where an appellate court has apparently rejected the viability of a national class action. *See, e.g.*, *7A Fed. Prac. & Proc. Civ.* § 1769.1 (3d ed.) ("The fact that the counsel is engaged in multiple parallel or overlapping class suits does not, standing alone, establish a conflict); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1046 (N.D. Cal. 2014) (quoting *Newberg* and noting that "concurrent representation may be beneficial in some situations"); *see also Sandoval*

22

*v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 569 (N.D. Cal. 2015) ("[C]lass counsel will not necessarily be disqualified merely for representing another class against the same defendants …").

Instead, the key inquiry in determining whether Plaintiff's Counsel has a conflict of interest is whether the proposed classes themselves have conflicting interests. *See Newberg on Class Actions* § 3:75 (5th ed) ("[C]lass counsel may represent multiple sets of litigants – whether in the same action or in a related proceeding – so long as the litigants' interests are not inherently opposed."). Actual conflicts of interest may arise between class members "where a limited fund means that the recovery of one claimant will cut directly into recovery by another, where substantive law permits recovery by only one or the other set of litigants, where one client is litigating an appeal to a class action settlement in which another claimant claimed recovery, and where counsel's actions have generated conflicts between class representatives and the class." *Newberg on Class Actions* § 3:75 (5th ed). None of these actual conflicts exist in this case.

Importantly, there is no overlap between the proposed class members here and in *Mazloom* at this juncture. While the *Mazloom* case in the Northern District of New York currently proposes a nationwide class (excluding any class approved in this action), there is no assurance that the *Mazloom* court will certify a nationwide class. Plaintiff's Counsel has been expressly clear to both the Court and Navient's Counsel that if a Circuit-wide class is certified here – and if a subsequent nationwide class is certified in *Mazloom* – that this class would be carved out of the *Mazloom* class. As such, any potential overlap between members of these respective classes is purely speculative.

Furthermore, this case is not a "limited fund" case where the respective proposed classes are competing for a finite pool of recovery from the Defendants. Courts have found that the same counsel cannot represent two parallel class action classes when the defendant has limited funds to

23

pay the plaintiffs. *See, e.g.*, *Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) (noting that "[t]he possibility that assets and insurance of the defendants who may have committed fraud against the plaintiffs will be insufficient to satisfy an alleged liability to the class of over $20 million is great enough to influence litigation strategy" and holding that because the proposed classes in two separate lawsuits thus had conflicting interests, "counsel cannot represent both"); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 192 (N.D. Ohio 1984) (noting that "it is not inconceivable that the amount sought by *Chinchar* plaintiffs and the proposed classes here will exceed the total assets of Press Publishing and Cole … [and] counsel cannot represent different plaintiffs with conflicting claims against the same defendants."). In the instant case, Defendants have not made any indications of insolvency or inability to satisfy a judgment to only one class related to the claims in these cases. Thus, there is no competition between the proposed classes for a limited pool of recovery from Navient.

This is also not a case where Navient can plausibly allege that counsel for the plaintiff has been inadequate in its representation.  Navient cites *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D. Ohio 1995), but in that case the court found counsel were inadequate where they had "not even satisfied the most basic requirements of Rule 11" because of their " repeatedly disappointing pleadings, arguments, and effort in this action." *Id.* at 679. As a result of the proposed attorneys demonstrated lack of competence, the court was concerned that "counsel will trade off the interests of certain of its clients to the detriment of other clients." *Id.* Here, to the contrary, undersigned counsel worked doggedly to obtain a very favorable settlement on behalf of debtors in the Fifth Circuit and have brought the instant suit to ensure that debtors in the Eighth Circuit can obtain similar relief. There is no evidence that the class members in this case are at any risk of "being sold out." *Id.*

24

Finally, Navient cites *Bund v. Safeguard Properties, LLC*, 2018 Wl 5112642 (W.D. Wash. Oct. 19, 2018) for the proposition that filing multiple class actions for overlapping members creates potential conflicts. But *Bund* was a case where the counsel filed multiple overlapping class actions within the same jurisdiction. *See id.* at *8 (discussing the "potential conflicts of interest raised by the prosecution of multiple class action lawsuits throughout the state"). Undersigned counsel have filed only one class action in this jurisdiction, not multiple overlapping class actions asking different courts within this district (or even within the Eighth Circuit) to interpret the Bankruptcy Code. None of the concerns expressed by the *Bund* court (inconsistent rulings, forum shopping, or requiring the choice between alternative settlements) are actually present in this case. Indeed, Navient does not explain how any of the concerns raised in *Bund* arise in this case, other than a vague suggestion that this Court might depart from the rulings of three Circuit courts and hold that Woodard's loan is non-dischargeable under §523(a)(8)(A)(ii). The class members at issue do not have "different interest and incentives," (Opp. at 21) they have exactly the same interest and incentives—they seek a declaration that their loans were discharged, restitution of payments, and penalties against Navient.

Plaintiff's proposed Counsel have no conflict that would prevent them from serving as ardent and passionate advocates for the proposed class here. This Court should find that class counsel satisfies the adequacy requirements of Rules 23(a)(4).

## V.     The class satisfies Rule 23(b).

Navient raises a plethora of purported reasons why the putative class does not meet the requirements of Rule 23(b). None of them are persuasive nor reliant on binding Eighth Circuit precedent.

25

## A. Rule 23(b)(1).

Rule 23(b)(1)(A) allows a class action to be maintained if "prosecuting separate actions by

or against individual class members would create a risk of inconsistent or varying adjudications

with respect to individual class members that would establish incompatible standards of conduct

for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Navient argues that certification

under Rule 23(b)(1)(A) is inappropriate when a class seeks compensatory damages. Navient cites

no Eighth Circuit precedent in support. Opp. at 21-22.

That argument "inserts a requirement into 23(b)(1)(A) that is not present." *Jones v.

NovaStar Fin., Inc.*, 257 F.R.D. 181, 193 (W.D. Mo. 2009) (quoting *In re Merck & Co., Inc. Sec.,

Derivative & ERISA Litig.*, No. CIV.A. 05-1151-SRC, 2009 WL 331426, at *11 (D.N.J. Feb. 10,

2009)). In *Jones*, the Western District of Missouri certified a class action for claims under the

Employee Retirement Income Security Act ("ERISA") under Rule 23(b)(1)(A) and (B) because

the central questions concerning defendants' conduct—whether they breached their fiduciary

duties—were not individual, regardless of whether restitution was also sought. *Id.* at 193-94.

Here, one of the primary remedies sought by Plaintiff on behalf of this class is a declaration

that his non-Title IV student loan was discharged in bankruptcy and an injunction against further

collections. Inconsistent resolution of that claim by different courts across this Circuit will subject

Navient to competing instructions to collect or to refrain from collecting on students who have the

exact same loans, precisely the outcome Rule 23(b)(1)(A) seeks to avoid. The damages sought are

restitutionary and not determinative of whether class certification under Rule 23(b)(1)(A) is

appropriate.

Navient states that Plaintiff's assertion that this issue has been determined by other Circuits

in Plaintiff's favor—namely the Second, Fifth, and Tenth Circuits—somehow undermines his

argument that without a class action Navient is at risk of inconsistent rulings. But as long as the potential for additional courts to weigh in on the same legal issue exists, there is a risk of inconsistent resolution of the claims—and indeed, Navient is at least continuing to litigate the issue in hopes that it can reach a result that is inconsistent with existing precedents.

In fact, courts routinely certify classes under 23(b)(1)(A) where a defendant is obligated to treat similarly-situated individuals in the same manner. *See Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006) (certifying class of prisoners challenging medical treatment by the Department of Corrections, noting that the class members are scattered throughout New York and "individual cases would inevitably be brought in a variety of state and federal courts, where there is a definite possibility of inconsistent results"); *Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016) (certifying class under Rule 23(b)(1)(A) where individual participants in a stock ownership plan challenged investments made by the trustee: "absent class certification, there is a legitimate risk that individual plaintiffs could obtain inconsistent dispositions resulting in incompatible standards of conduct for defendants, 'precisely the problems Rule 23(b)(1) was intended to avoid'") (quoting *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (internal quotations and citations omitted)); *see also United Steel, Paper and Forestry, Int'l Union v. Kelsey-Hayes* Co., 290 F.R.D. 77, 82 (E.D. Mich. 2013) (holding that union members and former employees could bring a class action challenging the employer's obligation under a collective bargaining agreement to provide lifetime health benefits to plaintiffs: "defendants could be subject to incompatible standards of conduct—paying the full cost of benefits for some plaintiffs but not for others") (internal citations omitted).

In each of these cases, the class members all shared the exact same legal status vis-à-vis the defendant, and it would be incongruous to allow the possibility of separate courts coming to

different conclusions regarding people in identical factual situations. The same is true here, and the fact that monetary relief could be awarded incidentally to that ruling does not make Rule 23(b)(1)(A) inapplicable.

### B. Rule 23(b)(2).

Navient argues that the relief sought by Plaintiff is "duplicative of the discharge injunction Plaintiff has already received" and that "[g]ranting further injunctive relief on the same point would be superfluous." Opp. at 23. Navient further contends that the "gravamen of Plaintiff's Complaint" is therefore "one of monetary relief[.]" *Id.* at 23. Navient then incredibly suggests that Plaintiff has "tacked on" equitable relief and therefore certification is inappropriate under Rule 23(b)(2).

Plaintiff can bring this action as an adversary proceeding for declaratory judgment, pursuant to the bankruptcy's contempt powers. *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997); *see also In re Schultz*, 615 B.R. 834, 838, 841 (Bankr. D. Minn. 2020) (noting prior adversary proceeding against Navient to determine loan dischargeability that ultimately resulted in settlement and confirming court's jurisdiction to consider dischargeability); *see also Falco v. Farmers Ins. Groups*, No. 4:12-CV-00134-BCW, 2014 WL 11394453, at *4 (W.D. Mo. June 19, 2014), *aff'd sub nom. Falco v. Farmers Ins. Grp.*, 795 F.3d 864 (8th Cir. 2015) (assuming without deciding, that plaintiff could assert a private claim under § 524).

Navient nonetheless argues that the declaratory relief sought is "entirely derivative of" the existing discharge injunction. Opp. at 24. It asserts that "[e]ntry of a declaratory judgment here would not serve the essential purposes of a declaratory judgment." This is a remarkable argument considering that Navient contends that the class members' debts are not discharged by their discharge orders. *See, e.g.*, Navient's Plaintiff's Request for Admission No. 5 (attached as Exhibit

28

19 to Doc. 14) ("Within the Eighth Circuit, at this time, within the confines of the definition of Private Education Loans, such loans may be non-dischargeable as funds received as an educational benefit pursuant to 11 U.S.C. § 523(a)(8)(A)(ii).").

An additional order declaring the dischargeability of the debts at issue and enjoining conduct attempting to collect such dischargeable debts would be "necessary or appropriate to carry out the provisions of" the Bankruptcy Code by clearly delineating what conduct is prohibited. 11 U.S.C. § 105(a). Navient's argument implies that if Plaintiff and class members are awarded the declaratory relief sought, nothing would change. That simply could not be further from the truth— Navient would be forced to stop illegally collecting on Plaintiff's and class members' discharged debts. Clearly, the statutory discharge injunction itself has not prevented Navient from doing so.

Additionally, the cases Navient relies on are bound up in contempt. Plaintiff and class members are not just seeking orders of contempt—they are seeking injunctive relief, a declaratory judgment, and restitution. The bankruptcy court in *In re Homaidan* rejected Navient's argument the declaratory relief sought here is in any way illusory. 596 B.R. 86, 101 (Bankr. E.D.N.Y. 2019), *aff'd sub nom. Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021). The court noted, in denying Navient's motion to dismiss the declaratory judgment action seeking enforcement of Section 524 discharge injunctions "there is nothing speculative about the relief that [plaintiff] seeks.". The declaratory relief sought is not, as Navient argues, "pure surplusage." Opp. at 25.

Navient further contends Rule 23(b)(2) is inappropriate because the monetary relief sought is not incidental to the requested injunctive relief. Opp. at 26-29. Rule 23(b)(2)'s advisory committee notes states that it does not extend "to cases in which the appropriate final relief relates exclusively or predominately to money damages." Fed. R. Civ. P. 23(b)(2) (advisory committee's notes). The Eighth Circuit has not defined "predominately" but courts within this Circuit

29

nonetheless apply the "weight of the authority" which holds "money damages predominate when they are not incidental to declaratory and injunctive relief, i.e., when the damages do not flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 374 (E.D. Ark. 2007) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (internal quotation marks omitted); *see also In re Union Pacific R.R. Employment Practices Litigation*, No. MDL 1587, 803CV437, 2005 WL 1027078, at \*4-5 (D. Neb. Mar. 31, 2005) (applying predominance standard).

Navient likens the restitution sought by Plaintiffs to the backpay in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), which the Court found was not incidental to the relief sought, primarily because of individualized issues like whether Wal-Mart had a non-discriminatory purpose for not denying individual class members a raise or promotion. *See id.* at 364. That type of individualized inquiry is certainly not implicated here, where straightforward restitutionary damages will be easily ascertained from Navient's loan records. But, in any event, post-*Wal-Mart* courts have often addressed the issue of classes seeking both injunctive and monetary relief by certifying a "hybrid" class pursuant to both Rule 23(b)(2) and Rule 23(b)(3). *See, e.g.*, *Reyes v. Julia Place Condominiums*, 2015 WL 5012930, at \*8 (E.D. La. Aug. 20, 2015) ("The Court finds that certification under Rule 23(b)(2) is appropriate for the injunctive relief class … In addition, the Court finds that the requirements of Rule 23(b)(3) are met for the monetary relief class."); *McMillion v. Rash Curtis & Assocs.*, 2017 WL 3895764, at \*10 (N.D. Cal. Sept. 6, 2017) (certifying a class for collection violations under the TCPA and FDCPA "for injunctive relief only pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3)"); *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at \*11 (C.D. Cal. Jan. 3, 2017) (in action against debt collector for violations of

30

California wiretapping laws, certifying "the injunctive relief portion of this action under Rule 23(b)(2) and the monetary damages portion of this action under Rule 23(b)(3)"). As noted below, Plaintiff can prove the requirements of Rule 23(b)(3) are satisfied in this case as well.

### C. Rule 23(b)(3).

Navient argues that Plaintiff has not satisfied Rule 23(b)(3) because (1) common questions do not predominate over individual questions; (2) the class is not ascertainable; and (3) the class action is not a superior method for resolution. Opp. at 29-35. None of these claims are true.

> *i.    Common issues predominate and the class is ascertainable.*

First, common issues predominate over individual issues; the central issue being: are the class members' loans dischargeable? As set forth in Plaintiff's Class Certification Motion, all class members have been injured by Defendants; Plaintiff's and class member's claims against Navient are based solely on Navient's conduct; and the federal bankruptcy laws apply to all class members the same.

Nor do individualized damages defeat predominance. *See In re Potash Antitrust Litigation*, 159 F.R.D. 682, 697 (D. Minn. 1995) ("[T]he fact that the damages calculation may involve individualized analysis is not by itself sufficient to preclude certification when liability can be determined on a class-wide basis."). *See also Cope v. Let's Eat Out, Inc.*, F.R.D. 544, 556 (W.D. Mo. 2017) (noting that despite individualized damages were presented by class of restaurant employees, "common issues relating to Defendants' adoption, implementation, and enforcement of [the policy at issue] predominate[d] [the] action.")

Navient nonetheless sets forth a parade of purported individualized issues that will supposedly defeat predominance and undermine ascertainability—supposed individualized defenses it has to different class members' claims. Each of these questions is either irrelevant to

31

the issue of liability and class membership or is ascertainable from Navient's own records. Of course, predominance does not require that there be no individualized issues, nor does it even require that there be more common issues than individualized issues (although that is the case here). Instead, in order to predominate, "common, aggregation-enabling, issues" must be "***more prevalent or important*** than the non-common, aggregation-defeating, individual issues." *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (emphasis added)).

Importantly, though, Navient does not present any evidence that any of these defenses would defeat the claim of any actual class member. And none of these defenses bar the claim of Plaintiff,[14] the only class member before the Court. These issues defeat neither predominance nor ascertainability.

Going through some of these individual issues reveals they need not detain this Court long:

- Misrepresentations about enrollment status: Plaintiff does not assert that any class member's loan is dischargeable because they were not enrolled full-time, and a loan to a non-Title IV school remains dischargeable regardless of a student's enrollment status;

- Class action waiver: Plaintiff has addressed the issue of class action waiver above, which is contained in the arbitration clause only and is not enforceable in this bankruptcy litigation;

- Re-affirmation: Navient has produced no evidence that any putative class member has reaffirmed their debt, which would have to have been done in a formal bankruptcy court filing, but regardless, such a debtor would be excluded from the class;

---

[14] The only purportedly individual issue relevant to the Plaintiff is how his student loan was treated in his confirmed plan. And as noted above, Navient has produced absolutely no evidence in this case, nor has it attached to its opposition any evidence, showing that any class member obtained unique treatment for their private Navient loan through their chapter 13 plan. *See* discussion, supra, Section IV.A.

- <u>Proper scheduling of the debt</u>: By definition, the class members gave Navient notice of their bankruptcy, as the class members have been identified out of Navient's files from bankruptcy discharge orders Navient received. If Navient believes the debt was improperly scheduled, it has surely waived that argument by now, long after discharge orders were received;

- <u>Adequate Notice of the discharge</u>: Again, the class members gave Navient notice of their bankruptcy, as the class members have been identified out of Navient's files from bankruptcy filings they received. If Navient believes additional notice was required, it should have raised that argument pre-bankruptcy discharge.

In the end, the Court can review this list of purported individual issues, but it is readily apparent that these issues do not defeat liability and can be determined from Navient's own records. All the evidence needed to prove the class's principal claims and damages – including collections after bankruptcy discharge and number of collection attempts on debtors – can be obtained from Navient's files, and Navient has produced no evidence to support any of these purported defenses. A defendant cannot defeat predominance by asserting purported defenses without any factual support. Nor can Navient defeat ascertainability where the only relevant questions can be answered by its own records.

    *ii.*     *The class action is the superior method of resolution.*

Based on the class-wide allegations, Plaintiff has alleged and intends to prove Navient had a practice of collecting on loans that were discharged in bankruptcy based on a spurious reading of 523(a)(8), and that Navient did this to thousands of borrowers in the Eighth Circuit. This class action is an efficient and equitable way to resolve this issue and ensure these thousands of borrowers obtain the fresh start to which they were entitled.

33

Incredibly, Navient contends that because these hundreds of borrowers previously undertook the effort to file for bankruptcy and obtain a discharge, they each have a "strong interest" in bringing *yet another suit* to obtain the fresh start to which they are already entitled. *See* Opp. at 34. These unfortunate debtors have already sought relief from courts in this Circuit once, there is no reason to force them each to petition the bankruptcy courts a second time for relief they should have already obtained.

And despite Navient's claim that it has been subject to "hundreds of individual actions," Plaintiff is aware of only other similar case brought in this Circuit that might involve a putative class member that resulted in settlement. *See In re Schultz*, 615 B.R. at 838 (discussing prior adversary case against Navient). This class action, not individual actions, is the action by which the fresh start can be restored to these *thousands* of debtors.

Finally, Navient ends by returning to its contention that "each individual judge" has an interest in assessing the appropriate remedy for a discharge violation. As explained above, the fact that over 30% of the class members in this district obtained bankruptcies from a judge who is no longer active demonstrates this contention is absurd. The true party in interest in this case is not the bankruptcy judge who issued a form discharge order, but the unfortunate debtors of Navient who were entitled to a fresh start "unhampered by the pressure and discouragement of preexisting debt,"[15] and had that fresh start wrongfully denied by Navient. The fresh start is one of the most important elements of the Bankruptcy Code, particularly for the individual consumer bankruptcy debtors whose claims are at stake in this class action. This class action is an opportunity for this Court to restore the fresh start to thousands of borrowers who previously sought relief from courts in this Circuit. There is no more superior mechanism to accomplish that end.

---

[15] *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

34

## <u>CONCLUSION</u>

For the foregoing reasons, and those contained in Plaintiff's original memorandum, Plaintiff requests that this Court grant his Class Certification Motion and certify the proposed Class, under Rule 23(b)(1)(A), Rule 23(b)(2), and/or Rule 23(b)(3).


Dated: September 13, 2022.                      Respectfully submitted,


*/s/ Jason W. Burge*
Jason W. Burge
SBN (LA) 30420
Lara Richards
SBN (LA) 34054
Kaja S. Elmer
SBN (LA) 35568
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com
lrichards@fishmanhaygood.com
kelmer@fishmanhaygood.com


Lynn E. Swanson (to be admitted *pro hac vice*)
Lindsay E. Reeves (to be admitted *pro hac vice*)
JONES SWANSON HUDDELL & DASCHBACH LLC
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
lswanson@jonesswanson.com
lreeves@jonesswanson.com


Adam R. Shaw
George F. Carpinello (to be admitted *pro hac vice*)
BOIES SCHILLER & FLEXNER, LLP

3716004v.1

30 S. Pearl St., 11th Floor
Albany, New York 12207
(518) 434-0600
ashaw@bsfllp.com
gcarpinello@bsfllp.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of September, 2022, a true and correct copy of the foregoing was served via that Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/ Jason W. Burge*

36

3716004v.1